RECEIVED

JUL 1 4 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

TINA D. GOBERT                           CIVIL ACTION NO. 05-1179

VS.                                              JUDGE DOHERTY

COMMISSIONER OF SOCIAL SECURITY      MAGISTRATE JUDGE METHVIN

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

### *Background*

Born on May 18, 1961, Tina D. Gobert ("Gobert") is a 45-year-old claimant with a high school education. (Tr. 59). Gobert has worked in the past as a gambling cashier, sewing machine operator, and retails sales clerk. (Tr. 12).

On February 13, 2003, Gobert filed an application for supplemental security income, alleging disability as of February 1, 1997 due to vocal chord impairment, an inability to wear closed-in shoes, arthritis, depression, arthritis, migraine headaches, and an inability to stand for long periods of time. (Tr. 147). Her application was denied initially, and Gobert failed to timely request a hearing. However, Gobert subsequently established good cause for the untimely request for a hearing, and a hearing was held on August 25, 2004. (Tr. 53-103). After this hearing, Gobert submitted additional evidence to the ALJ, who determined that a supplemental haring would be necessary to resolve her case. Therefore, Gobert testified at a supplemental hearing on January 11, 2005. (Tr. 20-52). Following the hearings, an unfavorable decision was

issued by an ALJ on February 23, 2005. (Tr. 12-18). A request for review was denied by the

Appeals Council, (Tr. 4-6), making the ALJ's decision the final decision of the Commissioner

from which Gobert now appeals.

## Assignment of Errors

Gobert raises two errors on appeal: (1) the ALJ failed to find that she is disabled pursuant

to Listing 1.04; and (2) the ALJ failed to properly consider the testimony of the vocational expert

who testified at the January 11, 2005 hearing.

## Standard of Review

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the

Commissioner's decision is supported by substantial evidence in the record; and (2) whether the

decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir.

2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232,

236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292;

Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in

the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of

the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson

v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate

only if no credible evidentiary choices or medical findings exist to support the decision.

Johnson, 864 F.2d at 343.

*Analysis*

In determining whether a claimant is capable of performing substantial gainful activity,

the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f)

(1992):

1.  If a person is engaged in substantial gainful activity, he will not be
    found disabled regardless of the medical findings.

2.  A person who does not have a "severe impairment" will not be
    found to be disabled.

3.  A person who meets the criteria in the list of impairments in
    Appendix 1 of the regulations will be considered disabled without
    consideration of vocational factors.

4.  If a person can still perform his past work, he is not disabled.

5.  If a person's impairment prevents him from performing his past
    work, other factors including age, education, past work experience,
    and residual functional capacity must be considered to determine if
    other work can be performed.

In the instant case, the ALJ determined at Step 4 that although Gobert suffers from severe

depression, anxiety, and status-post neck surgery, she retains the residual functional capacity to

perform her past relevant work as a sewing machine operator.  (Tr. 17-18).

After careful consideration of the record, the undersigned concludes that the ALJ's

decision is supported by substantial evidence.

I.   **Listing 1.04**

Gobert contends that she satisfies the requirements of Listing 1.04 for disorders of the

spine.  Listing 1.04 states:

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture), resulting in compromise of a nerve root (including the

cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 220, App. 1, Listing 1.04, Social Security Administration. The introductory notes to the Listing state as follows:

> E. Examination of the Spine
> 1. General. Examination of the spine should include a detailed description of gait, range of motion of the spine given quantitatively in degrees from the vertical position (zero degrees) or, for straight-leg raising from the sitting and supine position (zero degrees), any other appropriate tension signs, motor and sensory abnormalities, muscle spasm, when present, and deep tendon reflexes. Observations of the individual during the examination should be reported; e.g., how he or she gets on and off the examination table. Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss.

20 C.F.R. Pt. 220, App. 1, Listing 1.04, Social Security Administration.

Although she does not make it clear in her brief, it appears that Gobert is arguing that she satisfies the requirements of Listing 1.04(A). After review of the entire record, the undersigned concludes that the medical records do *not* support Gobert's argument that she satisfies the requirements of a listed impairment.

Gobert was examined by Dr. Steven Davidoff, an internist, on September 18, 2004. Dr. Davidoff stated that Gobert has "normal ambulation on and off the exam table, up and out of the chair," and has a "normal ability to dress herself." (Id.). With regard to Gobert's spine, specifically, Dr. Davidoff reported the following:

> Right foot 2+ pulses, left foot 2+ pulses, radial bilateral 2+ pulses. She has got no effusions, she has got no blisters on her feet. Her gait is within normal limits. She was unable to walk on her heels, she could walk on her toes. Her grip in her right is 5/5 left 5/5.

(Id.). With respect to Gobert's range of motion, Dr. Davidoff appears to suggest that Gobert is exaggerating her symptoms, noting that her straight leg raising test results are "inconsistent," to wit:

> All of her extremities [are] within normal limits except for her straight leg raise supine right 25 degrees, left 25, although sitting leg raises were inconsistent right 90 degrees, left 90. She did lay straight back on exam table.

(Tr. 212). Dr. Davidoff also reported that Gobert's neurological examination was 5/5 in all extremities, and that she has no decreased ability to sit, stand, walk, hear, speak, or handle objects. (Tr. 212-13). Finally, Dr. Davidoff noted that Gobert's sensory functioning was within normal limits, that she has no tremors, nystagmus, that cranial nerves were grossly intact, and that deep tendon reflexes were 2+ patella femoral, which is considered normal. Dr. Davidoff also completed a "Medical Source Statement of Ability to Do Work-Related Activities," wherein he reported that Gobert has no limitations in the areas of lifting, carrying, standing, walking, sitting, pushing, or pulling, and that she has no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 214-17).

Gobert contends that the notes explaining the surgical procedure that Gobert underwent on September 24, 2004 clearly show that she satisfies the requirements of Listing 1.04(C),

specifically, the portion of the notes stating that Gobert has "severe radicular pain in both extremities" and "neurologic weakness." (Tr. 387). However, this report contains an assessment of Gobert's condition *before* her surgery (an anterior cervical discectomy). Reporting on September 27, 2004, the date that Gobert was discharged from the hospital, Dr. Michael Holland reported that Gobert had 90% relief from her pain and that her condition had improved markedly as a result of the surgery. (Tr. 236).

Therefore, considering that Gobert did not satisfy all of the requirements of Listing 1.04(C) before her surgery and that her condition was "markedly" improved after surgery, the undersigned concludes that Gobert does not satisfy the requirements of Listing 1.04, and this claim is without merit.

## II.     Testimony of Vocational Expert

Gobert also contends that the ALJ did not properly consider the testimony of the vocational expert at the hearing in making his finding of non-disability. In finding that Gobert can perform her past work as a sewing machine operator, the ALJ relied in part on the testimony of a vocational expert, who testified that a hypothetical claimant with a decreased ability to sit, lift, hear, speak, and handle objects, an ability to stand and walk two hours in an eight-hour workday, an inability to perform more than one or two-step tasks, and an ability to have only occasional interaction with supervisors and co-workers can perform Gobert's past work as a sewing machine operator, as well as the additional jobs of hand packer or packager, assembler, and mender. (Tr. 49). When questioned about a hypothetical claimant who can lift and carry less than 10 pounds frequently, can stand and walk for two hours, sit for six hours with a sit-stand option, can not reach in all directions, is limited to one and two-step instructions, and can only

less than occasionally interact with co-workers and the public, the vocational expert testified that such an individual could perform no work. (Tr. 51). Gobert contends that the ALJ should have relied on *this* testimony and concluded that she is disabled.

Hypothetical questions posed to vocational experts must reasonably incorporate all disabilities of the claimant recognized by ALJ, <u>Bowling v. Shalala</u>, 36 F.3d 431 (5th Cir.1994), but the ultimate issue of disability is reserved to the Commissioner. In the instant case, the ALJ included in his hypothetical question to the VE all of the limitations that he deemed supported by evidence in the record. Furthermore, the evidence in the record supports the ALJ's reliance on the vocational expert's testimony. For these reasons, the undersigned concludes that this claim is without merit.

### Conclusion

Considering the foregoing, it is recommend that the Commissioner's decision be **AFFIRMED.**

Any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, <u>Richard v. Sullivan</u>, 955 F.2d 354 (5th Cir. 1992) and <u>Shalala v. Schaefer</u>, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by **Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on June ___14___, 2006.

_____
Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)